MARY C. DONALDSON, PLAINTIFF-APPELLANT, v. BOARD
OF EDUCATION OF THE CITY OF NORTH WILDWOOD,
CAPE MAY COUNTY, DEFENDANT-RESPONDENT.

Reargued February 20, 1974—Decided June 10, 1974.

Mr. *John F. Callinan* argued the cause for the appellant (*Messrs. Perskie & Callinan,* attorneys).

Mr. *Edwin W. Bradway* argued the cause for the respondent.

*Mr. Thomas P. Cook* argued the cause for the New Jersey School Boards Association, *amicus curiae*.

*Mr. Cassel R. Ruhlman, Jr.* argued the cause for the New Jersey Education Association, *amicus curiae*.

*Mr. Theodore A. Winard,* Assistant Attorney General, argued the cause *amicus curiae* (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen L. Skillman,* Assistant Attorney General, of counsel; *Mr. Gordon J. Golum,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

JACOBS, J. The Appellate Division affirmed the dismissal of the petition which the plaintiff had filed with the State Commissioner of Education. 115 *N. J. Super.* 228 (1971). We granted certification on the plaintiff's application (59 *N. J.* 272 (1971)) and the matter has been fully argued and reargued before us by counsel for the parties and the *amici curiae*.

The plaintiff Mary C. Donaldson was employed by the respondent Board of Education of the City of North Wildwood from January 1967 through June 1969 as a teacher at the Margaret Mace Elementary School. In January 1969 she was notified by the North Wildwood Superintendent of Schools that her contract would not be renewed for the 1969–70 school year. She was not told why and though she persistently sought the reason or reasons from the Superintendent, and from the board which confirmed his action, she has been unable to obtain any pertinent disclosure. Counsel for the board apparently advised it that the failure to renew the plaintiff's contract precluded her from obtaining tenure and that "on tenure matters it is best not to give reasons."

In due course the plaintiff filed a verified petition with the State Commissioner of Education charging that the action of the Superintendent and the board was arbitrary, capricious

and unreasonable, and seeking review by the Commissioner under *N. J. S. A.* 18A:6–9. The respondent moved to dismiss the petition, and argument centering largely on whether the plaintiff was entitled to a statement of the reason or reasons for the refusal to renew her contract, was heard by the Acting Assistant Commissioner in charge of the Division of Controversies and Disputes. He reported to the Commissioner who granted the motion to dismiss on the basis of his finding that the plaintiff "has no right to a statement of reasons for respondent's non-renewal of her contract." The State Board of Education affirmed on the basis of the Commissioner's opinion and the Appellate Division, in turn, affirmed the decision of the State Board. 115 *N. J. Super.* 228.

The plaintiff's petition for certification was expressly confined to the issue of "whether a non-tenure school teacher is entitled to a statement of reasons for her non-retention by a school board." We granted certification for the sole purpose of reexamining the validity of the Commissioner's administrative position that a board of education which refuses to renew the contract of a nontenured teacher is under no obligation whatever to honor the teacher's request for a statement of the reason or reasons for her nonretention. In his formal opinion the Commissioner relied almost entirely on *People v. City of Chicago,* 278 *Ill.* 318, 116 *N. E.* 158 (1917) and this Court's reference to that case in *Zimmerman v. Board of Education of Newark,* 38 *N. J.* 65, 70 (1962), *cert.* denied, 371 *U. S.* 956, 83 S. Ct. 508, 9 *L. Ed.* 2*d* 502 (1963). But the Illinois case clearly has no current viability. There the Illinois Supreme Court sustained a board of education rule which prohibited membership by teachers in labor unions. In the course of its opinion it expressed the view that the board had an absolute right to decline to employ or reemploy any applicant for any reason whatever or for no reason at all and that "it is immaterial whether the reason for the refusal to employ him is because

or dark, is or is not a member of a trades union, or whether no reason is given for such refusal." 116 *N. E.* at 160. We need hardly point out that the sweep of the quoted language is no longer law anywhere and that this was expressly recognized in *Zimmerman* (38 *N. J.* at 70–71) which, incidentally, did not pass on the issue of whether a nontenured teacher who is not rehired is entitled to have a simple request for a statement of reasons fairly honored. See Weintraub, C. J. concurring in *Zimmerman, supra,* 38 *N. J.* at 79–80; *cf. Katz v. Bd. of Trustees of Gloucester County Col.,* 118 *N. J. Super.* 398, 404 (*Ch. Div.* 1972).

■■ It must be borne in mind that our Legislature has not at any time said that no reasons need be given when a nontenured teacher is not rehired. Bills bearing generally on the subject have been introduced periodically but thus far no pertinent legislation has been enacted; in the circumstances it is clear that no controlling inference as to intent may be drawn from the legislative silence. See *Boys Markets v. Retail Clerks Union,* 398 *U. S.* 235, 241–242, 90 S. Ct. 1583, 1587–1588, 26 *L. Ed. 2d* 199, 205 (1970); *Girouard v. United States,* 328 *U. S.* 61, 69–70, 66 S. Ct. 826, 829–830, 90 *L. Ed.* 1084, 1090–1091 (1946); *cf. J. C. Chap. Prop. Owner's &c. Assoc. v. City Council,* 55 *N. J.* 86, 95 (1969); *Schmoll v. Creecy,* 54 *N. J.* 194, 203 (1969); *Fraser v. Robin Dee Day Camp,* 44 *N. J.* 480, 486 (1965); *Walls v. Horbach,* 189 *Neb.* 479, 203 *N. W. 2d* 490, 492 (1973); *State v. Gorham,* —— *Iowa* ——, 206 *N. W. 2d* 908, 913 (1973).* The Legislature has established a tenure system

*The suggestion has been made that, although *L.* 1971, c. 436 (*N. J. S. A.* 18A:27–10 *et seq.*) is admittedly silent on the subject, its history is pertinent and is somehow controlling as to the intent of the Legislature. We find the suggestion to be based on misconception and to be insupportable. In the first place, the crucial time is not 1971 but is 1969 when Mrs. Donaldson was not reemployed and as this Court pointed out in *Fraser v. Robin Dee Day Camp,* 44 *N. J.* 480, 486 (1965), the introduction of a bill years later can shed little light on the "intent of the Legislature which enacted the original law." In the second place, although the Senate bill which culminated

which contemplates that the local board shall have broad discretionary authority in the granting of tenure and that once tenure is granted there shall be no dismissal except for inefficiency, incapacity, unbecoming conduct or "other just cause." *N. J. S. A.* 18A:28–5. The board's determination not to grant tenure need not be grounded on unsatisfactory classroom or professional performance for there are many unrelated but nonetheless equally valid reasons why a board, having had the benefits of observation during the probationary period, may conclude that tenure should not be granted. See *Association of New Jersey State College Faculties v. Dungan,* 64 *N. J.* 338, 351–352 (1973); *cf. Cammarata v. Essex County Park Commission,* 26 *N. J.* 404, 412 (1958). Surely the tenure system would not be adversely affected or at all impaired if the board were called upon to respond to the teacher's inquiry as to why she was not reengaged for the forthcoming school year. See *Drown v. Portsmouth School*

---

in *L.* 1971, *c.* 436 originally contained a requirement for reasons and hearing before the local board, the requirement was left out in the Senate without any recorded debate or discussion. It may be that the senators thought that the subject should be left for determination in this *Donaldson* case which had been decided by the State Commissioner of Education and was pending on appeal; or it may be that they were concerned with the intertwined requirement for hearing before the local board; or it may be that there were other motivations unrelated to the issue at hand. In any event the Senate was content to remain entirely silent and not act on the subject, and as this Court said in *Schmoll v. Creecy,* 54 *N. J.* 194, 203 (1969), its "inaction can mean only that the Legislature did not act." In the third place, the Legislature is not the Senate alone but is the Assembly coupled with the Senate. The Assembly, when it received the Senate bill, was not presented with any issue as to reasons and there is no basis for believing that it did not favor them; indeed when it was recently presented with a bill calling for reasons without any intertwined requirement for hearing before the local board the vote was 60 for and 15 against. See A1668 passed in the Assembly on May 16, 1974. All of the foregoing vividly illustrates the soundness of this Court's well settled position that no controlling inference may be drawn from legislative silence. See *J. C. Chap. Prop. Owner's &c. Assoc. v. City Council,* 55 *N. J.* 86, 95 (1969).

*District,* 435 *F. 2d* 1182, 1185 (1 *Cir.* 1970), *cert.* denied, 402 *U. S.* 972, 91 S. Ct. 1659, 29 *L. Ed. 2d* 137 (1971); *cf. Monks v. N. J. State Parole Board,* 58 *N. J.* 238, 245–249 (1971); 73 *Colum. L. Rev.* 882, 886 (1973); 85 *Harv. L. Rev.* 1327, 1331 (1972); 1 *J. Law & Ed.* 469, 482 (1972). See also Note, 29 *Wash. & Lee L. Rev.* 100 (1972):

> When the effects of a required statement of reasons are examined, it seems clear that little harm will be done to the system by this addition. The purpose of the scheme — the maintenance of a competent faculty — will not be affected, for the school board's freedom not to renew a teacher's contract will be unaffected. The only adverse effect is the slight administrative problem of processing the statement of reasons, and this is little different from the statement of notice that most systems currently require. That a statement of reasons will not harm the tenure system is evidenced by those states which currently afford such a right to probationary employees, with no apparent adverse effect. 29 *Wash. & Lee L. Rev.* at 109.

■ The federal courts have, as a matter of federal law, placed various restraints on local boards in their dealings with nontenured as well as tenured teachers. Thus a local board may not refuse to rehire a teacher because of his membership in a labor union or his exercise of constitutional rights. See *Pickering v. Board of Education,* 391 *U. S.* 563, 88 S. Ct. 1731, 20 *L. Ed. 2d* 811 (1968); *Perry v. Sindermann,* 408 *U. S.* 593, 598, 92 S. Ct. 2694, 2698, 33 *L. Ed. 2d* 570, 578 (1972); Van Alstyne, "The Constitutional Rights of Teachers and Professors," 1970 *Duke L. J.* 841, 847; *cf. Winston v. Board of Education,* 125 *N. J. Super.* 131, 144 *(App. Div.* 1973), *aff'd* 64 *N. J.* 582 (1974). However, for present purposes we may assume (see *Board of Regents v. Roth,* 408 *U. S.* 564, 92 S. Ct. 2701, 33 *L. Ed. 2d* 548 (1972)) that if he is not a tenured teacher he ordinarily has no federal constitutional right to a statement of reasons, though it would seem that if he litigates on the ground that he was not reengaged because of his race or his participation in protest movements or on other constitutionally impermissible grounds he would, in the course of customary discovery

proceedings, readily obtain the statement of reasons. Be that as it may, we need not pursue the federal aspects for, as in *Monks v. N. J. State Parole Board, supra,* 58 *N. J.* 238, the issue before us may be disposed of on grounds which are wholly State in nature. We have on many occasions insisted on procedural safeguards against arbitrary or unjust action though there may then have been no comparable safeguards in the federal sphere. See, *e. g., State v. Kunz,* 55 *N. J.* 128 (1969) ; *State v. Laws,* 51 *N. J.* 494, *cert.* denied, 393 *U. S.* 971, 89 S. Ct. 408, 21 *L. Ed. 2d* 384 (1968) ; *State v. Cook,* 43 *N. J.* 560 (1965) ; *cf. Rodriguez v. Rosenblatt,* 58 *N. J.* 281, 294 (1971) ; *State v. De Bonis,* 58 *N. J.* 182, 188. (1971).

In *Monks* (58 *N. J.* 238) a prisoner sought a statement of reasons for denial of his parole application. The Legislature had remained silent on the subject but the parole board had adopted an administrative rule against giving reasons and courts had sustained it. In defending its rule before us the board urged that the prisoner had no right to parole and that a requirement that reasons be stated would impose administrative burdens and might impair the parole system. We of course recognized that the prisoner had no right to parole but held that as a matter of elemental fairness he was entitled to a statement of reasons; in the exercise of our sweeping constitutional authority to review administrative actions (*In re Senior Appeals Examiners,* 60 *N. J.* 356, 362–371 (1972)), we struck the parole board's rule as arbitrary and directed that it be replaced by a rule "designed generally towards affording statements of reasons on parole denials." 58 *N. J.* at 249.

In the course of our opinion in *Monks* we noted that when dealing with administrative agencies we had long pointed to the need for "suitable expression of the controlling findings or reasons" (58 *N. J.* at 244) and we quoted Professor Davis to the effect that "One of the best procedural protections against arbitrary exercise of discretionary power lies

in the requirement of findings and reasons that appear to reviewing judges to be rational." *Davis, Administrative Law* § 16.12, *p.* 585 (1970 Supp.). We stressed that the need for fairness was "as urgent in the parole process as elsewhere in the law" and that "the furnishing of reasons for denial would be the much fairer course." 58 *N. J.* at 246. We cited *White v. Parole Board of State of N. J.,* 17 *N. J. Super.* 580, 586 (*App. Div.* 1952), where Justice Brennan had suggested that procedural safeguards on classification issues were called for by "considerations of simple fairness" and then concluded with the following:

So here, fairness and rightness clearly dictate the granting of the prisoner's request for a statement of reasons. That course as a general matter would serve the acknowledged interests of prodecural fairness and would also serve as a suitable and significant discipline on the Board's exercise of its wide powers. It would in nowise curb the Board's discretion on the grant or denial of parole nor would it impair the scope and effect of its expertise. It is evident to us that such incidental administrative burdens as result would not be undue. 58 *N. J.* at 249.

Everything said in *Monks* may equally be said in support of the teacher's claim here; indeed the opinion in *Monks* itself placed reliance on *Drown v. Portsmouth School District, supra,* 435 *F. 2d* 1182, where the Court of Appeals for the First Circuit sustained a nontenured teacher's request for a statement of reasons for her nonretention though it found no constitutional ground for additional relief. In his opinion Circuit Judge Coffin noted that the refusal to give any reason for the nonretention "effectively forecloses her from attempting any self improvement, from correcting any false rumors and explaining any false impressions, from exposing any retributive effort infringing on her academic freedom, and from minimizing or otherwise overcoming the reason in her discussions with a potential future employer." 435 *F. 2d* at 1184. Further on in his opinion Judge Coffin pointed out that a requirement that reasons be stated would impose "no significant administrative burden" and would not

"significantly inhibit the board in ridding itself of incompetent teachers." In the ultimate he held for the court that, the interests of the nontenured teacher in knowing the basis for the nonretention were "so substantial" and the inconvenience and disadvantages to the board in supplying the information "so slight," the requested statement of reasons should be honored under federal constitutional principles. But see *Board of Regents v. Roth, supra,* 408 *U. S.* 564, 92 S. Ct. 2701, 33 *L. Ed. 2d* 548.

It appears evident to us that on balance the arguments supporting the teacher's request for a statement of reasons overwhelm any arguments to the contrary. The teacher is a professional who has spent years in the course of attaining the necessary education and training. When he is engaged as a teacher he is fully aware that he is serving a probationary period and may or may not ultimately attain tenure. If he is not reengaged and tenure is thus precluded he is surely interested in knowing why and every human consideration along with all thoughts of elemental fairness and justice suggest that, when he asks, he be told why. Perhaps the statement of reasons will disclose correctible deficiences and be of service in guiding his future conduct; perhaps it will disclose that the nonretention was due to factors unrelated to his professional or classroom performance and its availability may aid him in obtaining future teaching employment; perhaps it will serve other purposes fairly helpful to him as suggested in *Drown* (435 *F. 2d* at 1184–1185) ; and perhaps the very requirement that reasons be stated would, as suggested in *Monks* (58 *N. J.* at 249), serve as a significant discipline on the board itself against arbitrary or abusive exercise of its broad discretionary powers.

The contrary arguments appear to us to be minimal in nature. There would of course be some administrative burdens but surely they would not be undue. And the tenure system would not be adversely affected for the requirement that reasons be stated would in nowise curb the breadth of

the board's discretionary authority to decide whether any particular teacher should or should not be reengaged. All this is evident from the experiences in those states which have long had tenure systems coupled with requirements that reasons be given to nontenured teachers who are not re-engaged. See *Drown, supra,* 435 *F.* 2d at 1185; 29 *Wash. & Lee L. Rev., supra,* at 109; *cf. Tilton v. Southwest School Corporation,* —— *Ind. App.* ——, 281 *N. E.* 2d 117 (1972). In *Monks* we explicitly rejected comparable arguments to the effect that the administrative burdens would be undue and that the breadth of the board's discretionary authority would be curbed. Experiences since *Monks* was handed down fully support our action and indeed serve to strengthen the suggestion that the very requirement that reasons be stated may serve as a significant discipline against arbitrary or abusive action. See *Beckworth, et al. v. N. J. State Parole Bd.,* 62 *N. J.* 348, 354 (1973).

 The plaintiff does not urge before us that, in addition to a statement of reasons, she was entitled to a formal hearing before the board. For present purposes, we assume that no such hearing was required although we hasten to suggest that a timely request for informal appearance before the board should ordinarily be granted even though no formal hearing is undertaken. See *Drown, supra,* 435 *F.* 2d 1182; *cf. Dunellen Bd. of Ed. v. Dunellen Ed. Assn.,* 64 *N. J.* 17, 31–32 (1973). In the matter at hand the plaintiff had the undoubted right to appeal under *N. J. S. A.* 18A:6–9 to the State Commissioner and to urge that the board's refusal to grant her request for a statement of reasons was arbitrary and should be set aside. Though his rejection of her position on that issue was in conformity with his prior administrative practice, we now hold that his practice was unsound and that consequently the plaintiff was entitled to an order at his hands directing the respondent board to give the reasons for her nonretention. Although strictly we need go no further here we consider it not inappropriate to refer briefly to the nature of the hearing before the Commissioner where

the nontenured teacher pursues the appeal after reasons for the nonretention have been furnished. On that issue reference may be made to the Commissioner's opinion in *Ruch v. Board of Education of the Greater Egg Harbor Regional High School District, Atlantic County,* 1968 S. L. D. 7.

In *Ruch* a teacher failed to receive his fourth contract and consequently did not obtain tenure. During the course of his employment his department chairman had submitted reports which outlined weaknesses in his teaching methods and techniques and which stated that he failed to meet the standards of the school district. He appeared before the board and was permitted to speak but was not reengaged. He appealed to the Commissioner and though he acknowledged that he had duly received a report adequately setting forth the reasons for dissatisfaction with his teaching, he contended that the reasons "were arbitrary, capricious and discriminatory and were based on his teaching of a subject for which he was not certificated." The board moved to dismiss his appeal and its motion was granted in an opinion by the Commissioner which set forth substantive and procedural principles which appear to have been well designed towards protecting the teacher's legitimate interests without impairing the board's discretionary authority and without unduly encumbering the administrative appellate process.

The Commissioner first noted that the board's discretionary authority was not unlimited and that its action could be set aside if it was "arbitrary, unreasonable, capricious or otherwise improper." He then pointed out that the board could not resort to "statutorily proscribed discriminatory practices, *i. e.,* race, religion, color, etc., in hiring or dismissing staff" nor could it adopt employment practices "based on frivolous, capricious, or arbitrary considerations which have no relationship to the purpose to be served." 1968 S. L. D. at 10. He held that, procedurally, the burden of sustaining the appeal was on the teacher and that the teacher's "bare allegation" of arbitrariness was "insufficient to establish grounds for action." He declined to enter into a

reevaluation of the teacher's classroom performance and teaching competence, pointing out that the matter involved the supervisor's professional judgment which was highly subjective and which was not charged to have been made in bad faith. With respect to the teacher's assertion that he was assigned to teach economics without certification the Commissioner found that, even if true, it was immaterial to the central issue before him. Finding no affirmative showing of "unlawful, arbitrary or capricious motivation" and finding no requirement for a plenary hearing before the board, the Commissioner dismissed the petition; his action was sustained by the State Board of Education and further review was not pursued.

The handling of *Ruch* at all levels indicates how negligible are the fears of tenure impairment and undue burden expressed by those who have thus far insisted on the withholding of reasons. Many boards by collective contracts under *N. J. S. A.* 34:13A–1 *et seq.* have already agreed to furnish reasons and those which have not will, under this opinion, hereafter be obliged to do so. We are convinced that in the process, the tenure system will have been strengthened rather than impaired and that the controlling values of fairness and justice will have been satisfied rather than ignored. In the light of the views hereinbefore expressed the Commissioner should not have dismissed the petition; in sustaining the dismissal the Appellate Division erred and its judgment is accordingly:

Reversed.

MOUNTAIN, J. (dissenting). Whether a nontenured member of a teaching staff should be given reasons for nonrenewal of his or her contract is a question that has received contradictory answers from legislatures and courts throughout the nation.[1] Cogent and persuasive arguments can readily be marshalled in support of either position.

---

[1]Several state legislatures have enacted provisions relating to nontenured teachers which parallel *N. J. S. A.* 18A:27–10 *et seq.*, and

My dissent in this case does not rest upon a belief that the result reached by the majority is wrong as a matter of policy, but rather upon the conclusion I have reached that a controlling legislative enactment governs the issue now before the Court, and that this being so, there is no room for judicial intervention. The opinion of the majority expressly states that its conclusion is not based upon federal constitutional law, and it certainly does not rest upon state constitutional grounds.[2] This being so, if an applicable statute

omit any requirement of a statement of reasons for nonrenewal. *See*, *e. g.*, *Ala. Code* Title 52, sec. 361(2) (1960) ; Colo. Rev. Stat. Ann. sec. 123–18–10 (Supp. 1967) ; *Mich. Comp. Laws Ann.* sec. 38.83 (1967) ; *N. H. Rev. Stat. Ann.* sec. 189:14–a (1964) ; *Ohio Rev. Code Ann.* sec. 3319.11 (Supp. 1972). Other state legislatures have enacted provisions specifically requiring a statement of reasons. *See*, *e. g.*, *Alaska Stat.* sec. 14.20.175(a) (1971) ; *Ariz. Rev. Stat. Ann.* sec. 15–259 (1956) ; *Cal. Educ. Code* sec. 13443 (Deering 1969) ; *Conn. Gen. Stat. Ann.* sec. 10–151 (Supp. 1972) ; *Del. Code Ann. Title* 14 sec. 1410 (Cum. Supp. 1970) ; *Ill. Ann. Stat.* ch. 122, sec. 24–11 (Smith-Hurd 1962).

State courts have generally determined the question as to whether a statement of reasons is required for nonrenewal of the contracts of nontenured teachers by reference to state legislative enactments. Where the relevant legislation does not require a statement of reasons, courts have concluded no such statement is mandatory. *See*, *e. g.*, *Still v. Lance*, 279 *N. C.* 254, 182 *S. E.* 2d 403 (1971) ; *Munro v. Elk Rapids Schools*, 383 *Mich.* 661, 178 *N. W.* 2d 450 (1970) ; *Williams v. School District of Springfield*, 447 *S. W.* 2d 256 (Mo. Sup. Ct. 1969) ; *Central School Dist. No. 1 v. Three Village Teachers Ass'n*, 39 *A. D.* 2d 466, 336 *N. Y. S.* 2d 656 (App. Div. 1972). Where the relevant legislation has mandated a statement of reasons, courts have acquiesced in the legislative decision. *See Waller v. Board of Ed. of Century Com. U. Sch. Dist.* #100, 13 *Ill. App.* 3d 1056, 302 *N. E.* 2d 190 (App. Ct. of Ill. 1973). *See generally, Fleming v. Concordia Parish School*, 275 *So.* 2d 795 (Ct. of App. of La. 1973).

Federal courts, prior to the Supreme Court's decision in *Board of Regents v Roth*, 408 *U. S.* 564, 92 *S. Ct.* 2701, 33 *L. Ed.* 2d 548 (1972), also disagreed as to the need for providing reasons for nonrenewal of nontenured teachers' contracts. *Compare Orr v. Trinter*, 444 *F.* 2d 128 (6 Cir. 1971) with *Drown v. Portsmouth School District*, 435 *F.* 2d 1182 (1 Cir. 1970).

[2]The authorities cited by the majority clearly indicate that the state constitution does not form the basis for the majority opinion. *See State v. Kunz*, 55 *N. J.* 128, 144 (1969) ; *State v. Laws*, 51 *N. J.* 494, 514 (1968) ; *State v. Cook*, 43 *N. J.* 560, 569 (1965).

has been enacted — as is here the case — and the legislative intent can be discerned, either from the words of the statute itself or from the history of its passage through the Legislature, the function of the judiciary is confined to giving effect to that intent.

In 1969, at the time plaintiff's contract was not renewed, there was no relevant statute with respect to the reemployment of probationary (*i. e.,* nontenured) teachers. This is no longer the case. *L.* 1971, *c.* 436, now *N. J. S. A.* 18A:27–10 *et seq.,* became effective September 1, 1972.[3] Under this

---

[3]This statute, in its present form, provides:

18A:27–10. Nontenure teaching staff member; offer of employment for next succeeding year or notice of termination before April 30

On or before April 30 in each year, every board of education in this State shall give to each nontenure teaching staff member continuously employed by it since the preceding September 30 either

a. A written offer of a contract for employment for the next succeeding year providing for at least the same terms and conditions of employment but with such increases in salary as may be required by law or policies of the board of education, or

b. A written notice that such employment will not be offered.

18A:27–11. Failure to give timely notice of termination as offer of employment for next succeeding year

Should any board of education fail to give to any nontenure teaching staff member either an offer of contract for employment for the next succeeding year or a notice that such employment will not be offered, all within the time and in the manner provided by this act, then said board of education shall be deemed to have offered to that teaching staff member continued employment for the next succeeding school year upon the same terms and conditions but with such increases in salary as may be required by law or policies of the board of education.

18A:27–12. Notice of acceptance; deadline

If the teaching staff member desires to accept such employment he shall notify the board of education of such acceptance, in writing, on or before June 1, in which event such employment shall continue as provided for herein. In the absence of such notice of acceptance the provisions of this article shall no longer be applicable.

18A:27–13. Inapplicability of act to teaching staff employees of county colleges

Notwithstanding the provisions of *N. J. S.* 18A:64A–13 the provisions of this act shall not apply to teaching staff employees of county colleges.

statute, in the event of nonrenewal, a probationary teacher need only be given written notice that further employment will not be offered; nothing is mentioned about giving reasons therefor. The board of education is neither explicitly required to give reasons nor is it expressly authorized to refrain from doing so. Had the statute, in plain words, adopted one or the other of these positions, I take it that further argument would have been precluded. Similarly, if the history of the legislation clearly and unequivocally reveals the legislative intent as to providing or not providing reasons for nonrenewal, further judicial review should similarly be foreclosed.

Here the legislative history of the statute is enlightening. The bill which eventually became *L.* 1971, *c.* 436 was introduced in the Senate January 29, 1970 as *Senate Bill* 470.[4]

---

[4]The bill as originally introduced provided:

An Act concerning education and providing for continued employment of nontenure teaching staff members and supplementing Title 18A of the New Jersey Statutes.

Be It Enacted by the Senate and General Assembly of the State of New Jersey:

1. Every board of education in this State shall cause each nontenure teaching staff member employed by it to be observed and evaluated at least twice in each school year, to be followed by a conference between that teaching staff member and his or her superior or superiors for the purpose of identifying any deficiencies, extending assistance for their correction and improving instruction.

2. On or before April 30 in each year, every board of education in this State shall give to each nontenure teaching staff member continuously employed by it since the preceding September 30 either

a. A written offer of a contract for employment for the next succeeding year providing for at least the same terms and conditions of employment but with such increase in salary as may be required by law or policies of the board of education, or

b. A written notice that such employment will not be offered.

3. Any teaching staff member who receives a notice of nonemployment pursuant to section 2 of this article, may within 5 days thereafter, in writing, request a statement of the reasons for such nonemployment, which statement shall be given to the teaching staff member in writing within 5 days after receipt of such request.

4. Any teaching staff member who has received such notice of nonemployment and statement of reasons and who has been employed, or

N. J. Sen. Jour. (1970) 196. As so introduced, the bill provided not only for the giving of reasons, upon request, but also for a hearing before the board of education. Amendments to the bill, however, deleting all reference to the giving of reasons and the holding of hearings, were introduced

if said employment were continued to April 30 would be employed, in the district for the equivalent of more than 1 academic year shall be entitled to a hearing before the board of education, provided a written request therefor is received in the office of the secretary of the board of education within 5 days after receipt by the teaching staff member of the statement of reasons.

5. The hearing provided for in section 4 of this article shall be conducted by the board of education in accordance with rules of procedures established by the State Board of Education and a determination as to the employment or nonemployment of said teaching staff member for the next succeeding year shall be made and a copy thereof served upon the teaching staff member on or before May 31. The determination of the board of education made and served within said time shall be conclusive.

6. Should any board of education fail to give to any nontenure teaching staff member either an offer of contract for employment for the next succeeding year or a notice that such employment will not be offered and upon request by the teaching staff member, a statement of reasons and a hearing, and in the event of such hearing shall fail to make and serve a copy of the determination, all within the time and in the manner provided by this article, then said board of education shall be deemed to have offered to that teaching staff member continued employment for the next succeeding school year upon the same terms and conditions but with such increases in salary as may be required by law or policies of the board of education.

7. If the teaching staff member desires to accept such employment he shall notify the board of education of such acceptance, in writing, on or before June 1, in which event such employment shall continue as provided for herein. In the absence of such notice of acceptance the provisions of this article shall no longer be applicable.

8. Any nontenure teaching staff member who receives a notice that his employment will be terminated pursuant to a provision contained in said contract shall be entitled to a statement of reasons and a hearing as provided for in section 3, 4 and 5 of this article, except that a determination of the board of education shall be made and served before the expiration of the notice period provided for in said contract. Should the board of education fail to comply therewith, then said notice of termination shall be invalid and of no force and effect and the employment of the teaching staff member shall continue as if such notice had not been given.

9. This act shall take effect September 1, 1970.

in the Senate on March 23, 1970. *N. J. Sen. Jour.* (1970) 536–37. These amendments were adopted by voice vote on the same day. *Id.* As so amended, with all reference to the giving of reasons having been expressly deleted, the bill passed the Senate on April 2, 1970 by a roll call vote of 31–0. *Id.* at 563–64. With further slight changes not germane to the issue here, the bill took its further legislative course and eventually was enacted into law as *L.* 1971, *c.* 436 (*N. J. S. A.* 18A:27–10 *et seq.*).

The manner of the adoption of this law, as set forth above, makes the legislative intent entirely manifest. On March 23, 1970 the Senate formally acted to excise from the bill all reference to the giving of reasons. This cannot be described as legislative inaction; it was positive action. Such legislative action on proposed amendments to a bill is a well-recognized guide in the interpretation of a statute.

One of the most readily available extrinsic aids to the interpretation of statutes is the action of the legislature on amendments which are proposed to be made to a bill during the course of its consideration in the legislature. Both the state and federal courts will refer to proposed changes in a bill in order to interpret the statute into which it was finally enacted.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Adoption of an amendment is evidence that the legislature intends to change the provisions of the original bill. [2A *Sutherland, Statutes and Statutory Construction* (4th ed. 1973) sec. 48.18, p. 224][5]

[5]Other authorities supporting the view that amendments adopted during the course of legislative enactment are appropriate materials for use in the interpretation of the statute as finally adopted, include: *Bindczyck v. Finucane,* 342 *U. S.* 76, 83, 72 *S. Ct.* 130, 134, 96 *L. Ed.* 100, 105 (1951) ; *Wright v. Vinton Branch of Mountain Trust Bank,* 300 *U. S.* 440, 463–464, 57 *S. Ct.* 556, 562, 81 *L. Ed.* 736, 744 (1937) ; *United States v. Great Northern Ry. Co.,* 287 *U. S.* 144, 154–155, 53 *S. Ct.* 28, 32, 77 *L. Ed.* 223, 230 (1932) ; *United States v. Pfitsch,* 256 *U. S.* 547, 550–552, 41 *S. Ct.* 569, 570, 65 *L. Ed.* 1084, 1086 (1921) ; *United States v. St. Paul M. & M. Ry. Co.,* 247 *U. S.* 310, 318, 38 *S. Ct.* 525, 528, 62 *L. Ed.* 1130, 1134 (1918). *See also, Ablondi v. Board of Review,* 8 *N. J. Super.* 71, 77–78 (App. Div. 1950) ; Note, "Extrinsic Aids to Statutory Interpretation — The New Jersey View," 8 *Rutgers L. Rev.* 486, 490–91 (1954).

As stated above, the majority opinion does not base its conclusion that reasons must be given for nonrenewal upon any federal constitutional ground. Any such reliance would clearly be untenable in the light of *Board of Regents v. Roth,* 408 *U. S. 564,* 92 *S. Ct.* 2701, 33 *L. Ed.* 2d 548 (1972). Rather it adopts the view, in which I concur, that ". . . the issue before us may be disposed of on grounds which are wholly State in nature." It then enters upon a fairly extensive discussion of the case of *Monks v. State Parole Board,* 58 *N. J.* 238 (1971) where this Court held that prisoners were entitled to be given reasons for the denial of parole applications. It concludes the discussion by observing that "[e]verything said in *Monks* may equally be said in support of the teachers claim here . . ." There is, however, one completely distinguishing difference between this case and *Monks,* of which the majority take only passing note. Referring to the central issue in *Monks* — whether a prisoner should be given reasons for a denial of a parole application — the majority opinion says, "[t]he Legislature had remained silent on the subject." That is not the case here. Our Legislature has expressed its point of view affirmatively, clearly and without reservation or ambiguity. In *Monks* this Court was entirely free to adopt a rule that reasons be given prisoners denied parole. It was a matter as to which the Legislature — which clearly has the last word — had not spoken. The contrary is true here. We know, from an examination of legislative history, that this statute was enacted into law only after the Senate had specifically and affirmatively expressed itself as opposed to the requirement that reasons be given.

I would hold that the decision in this case should be governed by the controlling statute, *N. J. S. A.* 18A:27–10 *et seq.*[6] Examination of the legislative history of this enact-

---

[6]The majority observe, with complete accuracy, that at the time Mrs. Donaldson's contract expired, the pertinent statute, *N. J. S. A.* 18A:27–10 *et seq.*, had not yet been adopted, and hence, as of that

ment reveals an unequivocal repudiation by the upper branch of the Legislature of the requirement that reasons be given to a nontenure teaching staff member upon the nonrenewal of his or her contract. This Court should defer to this clear expression of legislative intent and accept it as binding.

I would affirm the decision of the Appellate Division for the reasons set forth above.

CLIFFORD, J. joins in this dissent.

*For reversal*—Chief Justice HUGHES and Justices JACOBS, HALL, SULLIVAN and PASHMAN—5.

*For affirmance*—Justices MOUNTAIN and CLIFFORD—2.

---

date, could not be deemed controlling. It is, however, somewhat disingenuous of the majority to labor this point inasmuch as its holding is intended to operate as an ongoing rule which boards of education will "hereafter be obliged" to follow. The rule here adopted by the majority is certainly not intended to be limited in its effect to the present plaintiff or to the period prior to the enactment of *N. J. S. A.* 18A:27–10 *et seq.*

As to the plaintiff in this case, I would hold that she is not entitled to a statement of reasons for nonrenewal of her contract. There was no practice of giving reasons at the time plaintiff's contract was not renewed, there was no constitutional requirement, either then or now, for giving reasons, and the Legislature has since impressed its *imprimatur* upon the administrative practice.