922 A.2d 817 (2007)
393 N.J. Super. 114
In the Matter of Physical Abuse Concerning A.I.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2006.
Decided May 21, 2007.
*820 Louis P. Bucceri, Clifton, argued the cause for appellant L.K. (Bucceri & Pincus, attorneys; Mr. Bucceri, of counsel and on the brief).
Lauren F. Carlton, Assistant Attorney General, argued the cause for respondent Department of Human Services (Stuart Rabner, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Carlton, on the brief).
Before Judges STERN, COLLESTER and MESSANO.
The opinion of the court was delivered by
STERN, P.J.A.D.
L.K., a teacher in the Wayne Public Schools ("the District"), appeals from the issuance of letters embodying findings by the Institutional Abuse Investigation Unit of the Department of Human Services ("IAIU"). IAIU found that the charges against appellant were "unfounded," but nevertheless issued a report to her employing school district that included findings that she made physical contact with a student and that her conduct was "unjustified and inappropriate[,]" "plac[ing] the child at some risk of harm." Appellant also challenges the IAIU's inclusion of recommendations for "Corrective/Disciplinary Action" in its letter to the District and IAIU's failure to send appellant a copy of that September 7, 2005 letter report. The corresponding letter sent to appellant on the same date failed to include any mention of those findings or recommendations. Appellant argues that "the practices and procedures utilized by the IAIU in this matter constitute a violation of due process and the principles of fundamental fairness which have previously been mandated by this court[,]" "the findings of the IAIU improperly include remedial requirements[,]" and "the conclusions reached by IAIU must be stricken as ultra vires[,][] because they are not supported by substantial evidence in the record."
Appellant complains that merely stating that a report is "investigative" and not "adjudicatory[,]" is a "subterfuge [] belied by the fact that the actual factual conclusions declare appellant guilty of `unjustified and inappropriate conduct.'" She further contends that because investigative findings were reported and recommendations made, IAIU must be compelled by us to (1) provide appellant with copies of all reports and letters it authored concerning the matter, (2) cease the practice of issuing interim reports in the absence of findings of abuse or neglect that warrant those letters, pursuant to N.J.A.C. 10:129-5.3(a), (3) cease the practice of including findings of the truth of allegations when the there was a conclusion that the charges of abuse or neglect were "unfounded," (4) "cease the practice of specifying remedial actions to be taken by an employer child care agency in the context of an unfounded finding and include an express statement that the child care agency is not required to comply with any of IAIU's remedial recommendations in such a case," (5) "[e]xclude all recommendations of discipline in the context of an unfounded finding as to the allegations against a school employee[,]" and (6) "[r]ecall and destroy" the September 7, 2002 letters sent to the District, County, and State and "re-issue" the report, and (7) destroy the August 22, 2005 interim report.
The State contends that, as the purpose of IAIU is to protect students and not to punish teachers, there was no due process violation, because no consequences flow from the letters. Any action taken in response to IAIU's letter by the local board of education would be subject to the due process and contract rights incident to that *821 action. The State further suggests that what is recommended need not be told to the teacher, because it is "confidential," only a recommendation, and constitutional rights are not implicated because no adverse consequences can flow from the letter itself.[1]
The first IAIU letter in question is the "interim status report" of August 22, 2005 to the District, which stated the investigation was ongoing but added that, while the student did not "sustain any injuries[,]" appellant's actions "were unjustified and inappropriate." The report "raised concerns about [appellant's] judgment and ability to successfully de-escalate situations involving students." A recommendation for administrative counseling and training, along with monitoring of appellant, was included.
The final report was embodied in three separate letters marked "confidential," dated September 7, 2005. Each had the same "Investigative Finding[,]" but contained a different "Evaluation of Facts" section and added additional statements to certain addressees.
The letter to the student's father included the "Investigative Finding" that the charge of "[p]hysical abuse was unfounded," that "no adjudicative findings have been made," and that "IAIU's review herein is solely investigative." However, following the "Investigative Finding," in the "[e]valuation of [f]acts[,]" it also stated that "concerns regarding the actions of the teacher" were noted to the District and County authorities. A copy of that letter was sent to the Chief Administrator of the Wayne School District but not to appellant.
The "confidential" letter to appellant contained an identical "Investigative Finding," and an "Evaluation of Facts" which stated that "[t]he results of the investigation do not support that physical abuse occurred; however, some information obtained during the investigation raised concerns regarding your actions." It advised that "[t]he district administration has been notified of this finding." The letter thereafter noted that, in the absence of certain developments, the findings and records associated with the matter "shall be expunged" in three years. The Chief Administrator of the Wayne Public Schools was also copied on the letter.
A third "confidential" letter of September 7, 2005 was sent directly to the Chief School Administrator of the Wayne Public Schools with copies to County school officials and the State's Office of the Child Advocate. It contained the identical "Investigative Finding" but included a significantly more developed "evaluation of facts." It noted the student was the aggressor, but that appellant "escalate[d]" the matter until "the student became assaultive." It stated that appellant "grabbed" the student's "ponytail quickly at the same time as [the student] was trying to move away and as a result, the student fell to the floor." It also noted that "[t]he actions of [appellant] were unjustified and inappropriate. Her actions placed the child at some risk of harm; however, those actions did not meet the statutory requirement to find abuse." Nevertheless, the IAIU made "Recommendations for Corrective/Disciplinary action," including "administrative counseling," "mandatory training/re-training in behavior *822 management and identification techniques" and "close monitor[ing] . . . to assess progress."

I.
Upon receipt of an allegation of child abuse or neglect, the Division of Youth and Family Services ("DYFS") is charged with "tak[ing] such action as shall be necessary to insure the safety of the child[.]" N.J.S.A. 9:6-8.11. See also N.J.S.A. 18A:6-7a. In the investigation process, "[t]he primary concern of all public agencies involved with child abuse and neglect is to ensure the safety, well-being, and best interests of the child." N.J.A.C. 10:129-1.4.
The IAIU investigates reports of child abuse or neglect. N.J.A.C. 10:120A-1.3(a). If the charges are substantiated, the charged teacher has the right to contest the findings before an Administrative Law Judge ("ALJ") in the Office of Administrative Law. See Matter of East Park High School, 314 N.J.Super. 149, 165, 714 A.2d 339 (App.Div.1998); Div. of Youth & Family Servs. v. M.R., 314 N.J.Super. 390, 411-12, 715 A.2d 308 (App.Div.1998). However, "[a] finding by DYFS that child abuse charges have not been substantiated, but that there is some indication a child was harmed or placed at risk of harm, is purely investigatory in nature, with none of the procedural protections of an adjudicatory proceeding." In re an Allegation of Physical Abuse Concerning R.P., 333 N.J.Super. 105, 117, 754 A.2d 615 (App. Div.2000) (citation omitted).[2]
We have nevertheless "held that DYFS has statutory authority to find that child abuse allegations against a teacher were `not substantiated,' but that it has `concerns' the teacher's conduct may pose a risk of harm to his or her students." R.P., supra, 333 N.J.Super. at 111, 754 A.2d 615 (citing In re an Allegation of Physical Abuse Concerning L.R., 321 N.J.Super. 444, 449-50, 729 A.2d 463 (App. Div.1999)). Therefore, while "a teacher is not entitled to a hearing to contest a finding that child abuse allegations have not been substantiated," R.P., supra, 333 N.J.Super. at 114, 754 A.2d 615, the investigatory findings and "concerns about the teacher's conduct," ibid., warrant "some due process protection," id. at 115, 754 A.2d 615, by "judicial review and correction [of the findings] `to curb administrative abuses[,]'" id. at 116, 754 A.2d 615 (quoting Monks v. N.J. State Parole Bd., 58 N.J. 238, 249, 277 A.2d 193 (1971)).
In R.P., supra, DYFS referred to investigative findings using the terms "preponderance of the credible evidence[,]" and we concluded that the language in its letter inferred that an adjudication had taken place and had to be "corrected so that it simply states . . . that DYFS's investigation revealed some evidence of harm or risk of harm to R.P., but that there has been no determination of the accuracy of R.P.'s allegations." Id. at 117, 754 A.2d 615. We also required that the "corrected letter" had to "clearly state[] that its finding was purely investigatory and that it made no adjudication of R.P.'s allegations . . . [and] that the school district is not required to take any remedial action." R.P., supra, 333 N.J.Super. at 119, 754 A.2d 615. *823
The same principles control this case because, while here the finding of abuse was "unfounded" and, therefore, not substantiated, the final letter to the District referred to "concerns" about appellant's conduct and stated that her actions were "unjustified and inappropriate" and "placed the child at some risk of harm."[3]

II.
Although interim letters are not required by statute or the administrative code, see N.J.A.C. 10:129-5.1 to 5.4, IAIU issued the August 22, 2005 letter to the District administrator prior to completion of its investigation. As such, finality did not support IAIU's statements that "[t]he actions of [appellant] were unjustified and inappropriate" or that "the actions of the teacher raised concerns about her judgment and ability to successfully de-escalate situations involving students."[4] However, neither the regulations nor any concept of due process prevents the IAIU from advising the District of the ongoing interim status of its investigation prior to the start of the new school year to enable the school to plan the student's schedule to assure her "safety, well-being, and best interests[,]" N.J.A.C. 10:129-1.4, provided it is clear that the investigation has not been concluded and that no final action is recommended or conclusion reached with respect to the teacher.
Despite its inappropriately conclusive language evaluating appellant's behavior, the August 22, 2005 letter was clear that the investigation was not complete. However, because the letter implicated appellant and the status of an investigation of her conduct, she should have been sent a copy of the letter. Nevertheless, as she subsequently received a copy of the August letter, the letter clearly stated that it referred to an incomplete and ongoing investigation and subsequently triggered no significant consequences, and the appellant's rights are hereinafter addressed as a result of her challenge to the September 7 letters, we need not further address the August 22, 2005 letter.

III.
Appellant argues that IAIU strayed from procedures authorized by N.J.A.C. 10:129A-1.3 and violated due process requirements by sending a detailed account of its concerns to appellant's employer without notifying appellant of the specific concerns and failing to advise appellant that the County Superintendent of Schools was notified of the report. Appellant requests that the court require that "[t]he `alleged perpetrator' or her counsel [] receive[] a copy of every letter that [is] sent to anyone which address[es] the appellant's conduct or concerns about it."
By statute, when DYFS or another entity in the Department of Children and Families[5] (hereinafter "the Department") *824 investigates a complaint alleging that a school employee committed child abuse or neglect, the Department is required to "notify the school district and the employee of its findings." N.J.S.A. 18A:6-7a. Although the Administrative Code was revised after the commencement of this investigation, it still reaffirms statutory policy by requiring that, when an allegation is determined to be "unfounded," the Department notify the accused employee, the "caregiver with physical custody at the time of the incident"; and "[t]he parent with whom the child normally resides. . . ." N.J.A.C. 10:129-5.4(b), (d), (e)(2007). However, the extent of the required notification is not specified in the Code or by statute.
New Jersey courts require that reasoning for a decision be given in administrative agency determinations such as teacher tenure denials. See Donaldson v. Board of Education of North Wildwood, 65 N.J. 236, 243, 246, 320 A.2d 857 (1974). In Donaldson, the Court emphasized that the requirement of disclosing the reasoning behind administrative agencies' decisions is motivated by fairness and, further, that disclosure is "[o]ne of the best procedural protections against arbitrary exercise of discretionary power. . . ." Id. at 243, 320 A.2d 857 (quoting Kenneth Culp Davis, Administrative Law Treatise § 16.12, 585 (1970 Supp.)). The Court then offered specific reasons why the reasoning behind a teacher tenure denial should be disclosed, all of which also apply to the case at hand:
[p]erhaps the statement of reasons will disclose correctible deficienc[i]es and be of service in guiding his future conduct; perhaps it will disclose that the nonretention was due to factors unrelated to his professional or classroom performance and its availability may aid him in obtaining future teaching employment; perhaps it will serve other purposes fairly helpful to him as suggested in Drown [v. Portsmouth School District, 435 F.2d 1182, 1184-85 (1st Cir.1970)], and perhaps the very requirement that reasons be stated would, as suggested in Monks, [(supra, 58 N.J. at 249, 277 A.2d 193)], serve as a significant discipline on the board itself against arbitrary or abusive exercise of its broad discretionary powers.
[Id. at 245, 320 A.2d 857.]
Furthermore, "due process is flexible and calls for such procedural protections as the situation demands." R.P., supra, 333 N.J.Super. at 113, 754 A.2d 615 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972)). As said in R.P., "a person has a constitutional interest in protecting his or her `good name or reputation . . . because of what the government is doing to that person. . . .'" Id. at 112, 754 A.2d 615 (quoting Doe v. Poritz, 142 N.J. 1, 105, 662 A.2d 367 (1995)).
IAIU complied with the statutory and administrative requirements of giving appellant notice of its findings by writing to her that its report concluded that the allegations against her were "unfounded," "some information . . . raised concerns[,]" and that "[t]he [D]istrict administration ha[d] been notified of this finding." However, by failing to give an explanation of the reasoning for its recommendations and findings notwithstanding that the *825 charges were "unfounded," the requirements of due process and fundamental fairness were not honored.
The letter to appellant stated only that the report of "physical abuse was unfounded," "no adjudicative findings ha[d] been made," and "[t]he results of the investigation do not support that physical abuse occurred[,]" but that "some information obtained during the investigation raised concerns regarding your actions." The letter to the District stated the same, but it then recited specific "information obtained during the investigation [which] raised concerns regarding the actions of [the teacher]," concluding that those actions "were unjustified and inappropriate [and] . . . placed the child at some risk of harm[.]" The letter also included "Recommendations for Corrective/Disciplinary Action" that were not in the letter sent to appellant.
As neither the "findings" nor the "concerns" were detailed or identified in the letter to appellant, but were explained to the District without notice to appellant, the IAIU acted inappropriately. We recognize that appellant asserts the right to more information while complaining that the agency said too much. We believe that appellant's legitimate concerns may be accommodated by making sure the teacher receives a copy of whatever the District received and that the District receives whatever is necessary to protect the best interests of a child. All correspondence must make clear that neither an adjudication has occurred and that DYFS has not mandated any action and that the District must take whatever action it deems appropriate, subject to appellant's right to contest whatever action it takes. Accordingly, we hold that appellant should have been copied on the letter to the District Administrator and that, although it had no direct consequences and did not give rise to a hearing or contest as such, the reasons supporting the findings and recommendations should have been more detailed in the letter to appellant. See N.J.A.C. 10:129-5.4.

IV.
Appellant contends that what IAIU labeled "concerns" were actually conclusions "that the allegations against her were accurate" and that while
IAIU has found appellant innocent of the offense within its jurisdiction (i.e.abuse), [it] declared her guilty of a supposedly lesser offense of an ". . . unjustified and inappropriate . . ." grabbing of a child, causing her to fall, and placing her "at some risk of harm." That offense is not within its jurisdiction and no statute or regulation authorizes it to reach those conclusions.
Appellant suggests that such findings have adverse consequences to her and must be deleted from the September 7, 2005 letter to the District.
As noted at the outset, IAIU is not limited to reporting on abuse in its findings. See L.R., supra, 321 N.J.Super. at 452, 729 A.2d 463. It is authorized to make recommendations to a district for action when it uncovers behavior that falls short of child abuse but is nonetheless undesirable. Ibid. In L.R., we said:
[a]n investigation of an abuse complaint against a teacher may disclose conduct which poses a threat to the physical and emotional well-being of the teacher's students even though it does not rise to the level of "child abuse" within the intent of N.J.S.A. 9:6-8.21. Therefore, we are satisfied that DYFS has not only the authority but the responsibility to take reasonable measures to protect students from any threat to their well-being. The most obvious available measure *826 to protect students from a teacher who poses a danger to their safety or welfare is for DYFS to communicate its concerns and recommendations to the school district which employs the teacher.
[Ibid.]
While the content of findings is not limited, IAIU must now classify allegations as either "unfounded" or "substantiated." N.J.A.C. 10:129-1.3. A finding of "unfounded" is currently defined by the Administrative Code as:
i. There is not a preponderance of evidence that the alleged child victim was harmed or placed at substantial risk of harm; or
ii. There is not a preponderance of evidence indicating that a parent or guardian and child were involved.
[N.J.A.C. 10:129-1.3.]
The finding of "substantiated" is defined as:
a finding when the available information, as evaluated by the child protective investigator, indicates by a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.A.C. 10:133-1.3 because the alleged child victim has been harmed or placed at risk of harm by a parent or guardian.
[N.J.A.C. 10:129-1.3.]
These two specific definitions were not in effect at the time of the underlying incident in this case, but they are substantively identical for the purposes of this evaluation. See 37 N.J.R. 283 (Jan. 18, 2005). See also R.P., supra, 333 N.J.Super. at 111, n. 2, 754 A.2d 615.
As IAIU is encouraged to report concerns even when no actual child abuse is "substantiated," its articulation of "concerns" about appellant's behavior was not inappropriate. See L.R., supra, 321 N.J.Super. at 452, 729 A.2d 463. If appellant's argument is correct, IAIU would be precluded from advising that an investigation found inappropriate behavior or even that a matter warranted further review or attention. This would be contrary to the broad statutory obligations of DYFS, IAIU, and related agencies to protect the safety of the child at the root of the complaint and violative of public policy designed to protect the best interests of our children. See N.J.S.A. 9:6-8.11, However, in rendering its report, IAIU must emphasize that it has neither adjudicated findings nor can it make binding recommendations. R.P., supra, 333 N.J.Super. at 117-119, 754 A.2d 615.

V.
Appellant further contends that IAIU's September 7 letter to the District's recommendation that she receive "mandatory training/re-training" was an order, not a suggestion. Appellant further asserts that "[a] recommendation of mandatory training can only be viewed as something the employer and the employee must do." To afford relief, appellant argues that we must order IAIU "to correct the letters sent in this matter" and "to avoid such actions in the future." The State argues that IAIU's remedial recommendations were in concert with its obligation to protect children under N.J.S.A. 9:6-8.11, and that "mandatory training" is a recommendation that the school district not give appellant the option of obtaining training but instead require that she do so.
As we have noted, the IAIU lacks the authority to instruct "a school district to take remedial action in response to [its] investigatory findings." R.P., supra, 333 N.J.Super. at 118, 754 A.2d 615. Specifically, Judge Skillman has stated that:

*827 DYFS does not have the statutory authority to order a school district to take any specific corrective action. The district has the sole authority to determine whether to initiate disciplinary proceedings or take other personnel action which may affect a teacher's employment rights. Any recommendations DYFS may make to the district are advisory only.
[L.R., supra, 321 N.J.Super. at 457, 729 A.2d 463.]
However, as previously stated, recommendations for further action based on its investigatory findings are within IAIU's authority provided it does not direct the District to take action. R.P., supra, 333 N.J.Super. at 117-119, 754 A.2d 615. If the District decides to take action, it must accord all the due process and contract rights that must be honored before formal action may be taken,[6] and the IAIU's findings may not by themselves provide a basis for the action. R.P., supra, 333 N.J.Super. at 118, 754 A.2d 615; see L.R., 321 N.J.Super. at 457, 729 A.2d 463. At argument before us, the State so acknowledged, and we were assured by the IAIU that no action has been or will be taken by the State (as opposed to the District). We trust that future letters to the District accompanying a finding that the charges were "unfounded" will contain language such as "the situation indicates a need for training" but that the need for such training is left to the discretion of the school district and cannot be mandated by the IAIU.
In this case, we order the September 7, 2005 letter to the District to be amended to include such language because it also needs to be amended to avoid an improper impression conveyed despite the ultimate finding that the charges of abuse were "unfounded."[7] Although interviews with students and teachers presented conflicting accounts and no adjudication took place, IAIU's letter to the District stated, as if conclusively found, that appellant "grabbed [A.I.'s] ponytail quickly at the same time as [the student] was trying to move away and as a result, the student fell to the floor." Accordingly, even though the section on "Investigative Findings" states that "[n]o adjudicative findings have been made [and] IAIU's review herein is solely investigative," the factual recitation in the "Evaluation of Facts" should be reworded to reflect this distinction. The letter should also note that IAIU's findings are not binding or conclusive. However, the overall conclusion that appellant's actions were "unjustified and inappropriate" is supported by the witness accounts, all of which suggest some physical confrontation between A.I. and appellant, and need not be deleted. See L.R., supra.

VI.
We conclude that IAIU acted within its proscribed authority in issuing findings that "unjustified and inappropriate" behavior occurred despite the finding that the allegation of child abuse was "unfounded." However, although it can have no adjudicatory impact, we hold that the September 7, 2005 letter to appellant and to the Chief Administrator of the Wayne School District must be amended, and we remand for further proceedings consistent *828 with this opinion. We further hold that a copy of any letter to a School District or District Administrator related to the conduct of a teacher must be sent to that teacher.
Remanded for further action consistent with this opinion.
NOTES
[1] In the absence of any argument to the contrary, we treat the September 7, 2005 letters as final administrative determinations appealable to us as of right. See, e.g., In re an Allegation of Physical Abuse Concerning R.P., 333 N.J.Super. 105, 754 A.2d 615 (App.Div. 2000); In re Allegation of Physical Abuse Concerning L.R., 321 N.J.Super. 444, 729 A.2d 463 (App.Div.1999).
[2] At the time we decided R.P., supra, three categories of abuse determinations existed: "substantiated," "not substantiated," and "unfounded." The finding of "not substantiated" has subsequently been removed as a category. It was defined as when the investigation ". . . provides some indication that a child was harmed or placed at risk of harm, but does not indicate that the child is an abused or neglected child as defined in N.J.A.C. 10:133-1.3[.]" R.P., supra, 333 N.J.Super. at 112, note 2, 754 A.2d 615.
[3] A finding of "unfounded" means that no child abuse existed. N.J.A.C. 10:129-1.3. However, due to the definition of "substantiated," which clearly indicates that IAIU found evidence of abuse or neglect, there is no category title that allows for a recognition of the large gap between abuse and proper behavior. The Commissioner may want to reconsider the categories of findings which might be appropriate.
[4] Additionally, conclusions were inappropriate given the interim nature of the report.
[5] Effective July 1, 2006, the Department of Children and Families was created as a new cabinet-level department in the Executive Branch. L. 2006, c. 47, §§ 3, 205. DYFS was moved to this new department from its previous location under the Department of Human Services. L. 2006, c. 47, § 9; L. 2004, c. 130, § 1(k), 9; N.J.S.A. 9:3A-9. The IAIU is a unit of DYFS, not an independent unit of the larger cabinet-level department that supervises DYFS. N.J.A.C. 10:120A-1.3(a); N.J.A.C. 10:133-1.3. Therefore, although DYFS is no longer part of the Department of Human Services and the regulations governing DYFS and the IAIU remain within the regulations governing the Department of Human Services, the IAIU is a subsidiary of DYFS within the Department of Children and Families and is no longer under the Department of Human Services. See N.J.A.C. 10:120A-1.3(a); N.J.A.C. 10:133-1.3.
[6] Appellant advised us at oral argument that the District has followed the recommendations and taken action. We are also advised that a grievance procedure has been instituted.
[7] We recognize that our scope of review is narrow, and that agency findings may be overturned only if "arbitrary, capricious or unreasonable or not supported by substantial evidence in the record as a whole." In re Taylor, 158 N.J. 644, 656, 731 A.2d 35 (1999).