**NEW CASTLE–GUNNING BEDFORD EDUCATION ASSOCIATION et al., Plaintiffs,**

v.

**BOARD OF EDUCATION OF the NEW CASTLE–GUNNING BEDFORD SCHOOL DISTRICT et al., Defendants.**

**Civ. A. No. 76–198.**

United States District Court, D. Delaware.

Oct. 20, 1976.

Sheldon N. Sandler and Robert Jacobs of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiffs.

David F. Anderson of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## OPINION

LATCHUM, Chief Judge.

A school board's decision not to renew the contracts of non-tenured teachers because of an anticipated reduction in student enrollment has resulted in this lawsuit by the teachers and their bargaining representative who allege a denial of procedural and substantive due process in the actions of the school board which left non-tenured teachers without a job for the ensuing school year.

Plaintiffs are twenty-three non-tenured teachers in the New Castle-Gunning Bedford School District and their bargaining representative, the New Castle-Gunning Bedford Education Association (the "Educa-

tion Association").[1] Defendants are the Board of Education of the New Castle-Gunning Bedford School District[2] (the "Board") and its Superintendent, Ray W. Christian. Currently before the Court are cross motions for summary judgment[3] filed by plaintiffs and defendants who agree that "there is no genuine issue as to any material fact." Rule 56(c), F.R.Civ.P.

On April 5, 1976, the Board, anticipating a decline in the student enrollment, voted not to renew the contracts of ninety-six non-tenured teachers, including the plaintiffs.[4] The defendants offered the following explanation for this decision.[5] Because teachers whose contracts are not going to be renewed must be notified of this decision at least by May 1[6] and because crucial state funding depends on the number of students in the school district,[7] student enrollment and teacher staffing needs must be projected in early spring in order to avoid obligating the Board to teachers for whom there is no direct state financial support. Defendant Christian, who had prepared these projections for the Board in the same manner over a period of ten years,[8] estimated a loss of twenty-five teacher positions on account of a reduction in student enrollment.[9] Also, on leave were eighteen tenured teachers who were not required to announce their intentions to return to their jobs until June 30.[10] Finally, the salaries for eight teachers were federally funded,[11] and, evidently, the Board was not sure of continued support from that source. Thus, it appeared to the defendant Christian and the Board that the contracts of forty-three teachers could not be renewed.[12] However, the contract between the Education Association and the Board requires that layoffs be carried out according to reverse seniority and teacher subject certification.[13] Fifty-two teachers had been hired on or after October 1, 1974, but this pool was not considered sufficient to cover the forty-three lost positions because it was possible that some teachers had subject certification of which the Board had no knowledge. Accordingly, to expand the non-renewal pool to adequate size, defendant Christian concluded that the seniority date would have to be September 1, 1974.[14] Addition of these teachers and the eight federally funded teachers brought the total of non-renewed teachers to ninety-six.[15]

1. Plaintiffs have abandoned their initial request (Docket Item 3) for class action certification. Docket Item 18, p. 20.

2. Members of the Board are sued in both their individual and official capacities except for Board member Kearney who is a defendant in his official capacity only.

3. Docket Items 12 & 13. Jurisdiction exists by virtue of 28 U.S.C. § 1343(3) & (4). The Court at times will refer to the plaintiff teachers as "plaintiffs."

4. Docket Item 14, pp. 31, 39.

5. See generally id.; Docket Item 15, pp. 4–11.

6. See text accompanying notes 16 & 17, infra.

7. 14 Del.C. § 1705(a).

8. Docket Item 14, pp. 4–6.

9. Id., p. 28. The method for preparing the projections is discussed at Docket Item 14, pp. 6–29 and is summarized by the parties at Docket Item 15, pp. 5–6 and Docket Item 16, pp. 16–22.

10. Docket Item 14, p. 29.

11. Id., p. 42.

12. The parties talk of forty-three layoffs that would be necessary. (Docket Item 14, p. 38). This figure, of course, covers only the teachers displaced by declining student enrollment or the return of teachers who had been on leave. Inclusion of the contracts of teachers with federally funded positions brought the number of contracts not to be renewed to fifty-one.

13. Docket Item 14, DX–A, Article XVII(E). Although the 1974–76 Master Agreement between the Board and the Education Association was introduced at the deposition of defendant Christian (Docket Item 14) as DX–A, it was not filed with the deposition transcript, but the parties, at the Court's request, submitted it. For convenience, the Court will treat the Master Agreement as an exhibit to Docket Item 14.

14. Docket Item 14, pp. 38–39.

15. Plaintiffs criticize the manner by which the number of lost teacher positions was calculated and also contend that, even if the Board's figures were accepted, twice as many teachers as necessary were not offered new contracts.

On April 6, 1976, the Board sent letters to the plaintiffs informing them:

"Unfortunately, student enrollment in the New Castle-Gunning Bedford School District is declining and the District must reduce its educational staff. . . . We must, therefore, inform you that your contract will not be renewed for the 1976–77 school year." [16]

This notice of non-renewal and the timing thereof were required by both 14 Del.C. § 1410 which provides in part:

"In the event that any board desires to dispense with the services of any teacher, such board shall give notice in writing to such teacher on or before the 1st day of May of any year of its intention to terminate said teacher's services at the end of such school year."

and by the Master Agreement between the Board and the Education Association which reads in part:

"Each teacher shall be notified of his contract and salary status for the following school year by April 1 or as soon thereafter as practical unless specifically directed by Delaware Statute." [17]

Hindsight has reflected unfavorably on the Board's decision not to rehire ninety-six teachers. Thirty-eight teachers remained on the recall list as of July 1, 1976.[18] By August 26, 1976, only sixteen non-tenured teachers had not been rehired,[19] and by September 29, 1976, only seven awaited a new contract from the Board.[20]

Thus, plaintiffs seek by their summary judgment motion reinstatement of those teachers who have not yet received a contract and a declaratory judgment to the effect that the wholesale termination procedures engaged in by the defendants violated the plaintiffs' constitutional and contractual rights.[21] In essence, they assert two claims: (1) a denial of procedural due process stemming from the Board's failure to provide them with a full hearing to determine whether its decision was based on just cause, and (2) a denial of substantive due process arising from the absence of any rational factual basis underlying the Board's decision not to renew their contracts.

I. *Procedural Due Process.*

 Before a public employee can assert a right to a due process termination hearing, he must first establish that he has a property interest in continued employment or that his discharge could adversely affect a liberty interest.[22] *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 164, 98 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (concurring opinion); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although a property interest can be created by an express contract, a clearly implied promise, or statutory or administrative standards, *Morris v. Board of Education of Laurel Sch. Dist.,* 401 F.Supp. 188,

16. Docket Item 16, p. A–1; Docket Item 14, p. 42. Plaintiffs maintain that the reason given in the notice of non-renewal is inaccurate because the return of teachers on leave, uncertainty about federal funding, and the seniority-certification problem also played major roles in the Board's decision.

17. Docket Item 14, DX–A, Article XIII(C). Plaintiffs do not challenge the timeliness of the non-renewal notices.

18. Docket Item 14, pp. 35, 71.

19. Docket Item 16, p. 3. The contracts of thirty-six teachers had the words "Temporary Contracts" written across the top. (Docket Item 14, pp. 35, 71–72). The Court agrees with plaintiffs, for purposes of this case, that the

Master Agreement would control if any conflict between the individual contract and the Master Agreement arose.

20. Representation by counsel for defendants at argument on the pending motions.

21. Docket Item 1. The plaintiffs also seek compensatory and punitive damages and attorneys' fees.

22. Plaintiffs do not assert that any liberty interest has been infringed, and, indeed, they could not because "nonrenewal standing alone does not constitute the deprivation of an interest in liberty." *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196, 1199 (C.A.8, 1974).

208 (D.Del.1975), the existence of a property interest is determined by reference to state law and not to federal law. *Bishop v. Wood, supra.*

Plaintiffs do not claim rights under any implied contract, and they concede that non-tenured Delaware teachers are not granted a property interest by state statute. *Newnam v. Board of Ed. of Mt. Pleasant Sch. Dist.,* 350 A.2d 339, 340 (Del.Sup. 1975). Thus, the plaintiffs rely exclusively upon the Master Agreement between the Board and the Education Association as the source of the property interest giving rise to due process rights. The task, then, for this Court is to anticipate the construction that Delaware courts would give to the Master Agreement.

According to plaintiffs a property interest, or a legitimate claim of entitlement to continued employment, has been established by Article IV(E) of the Master Agreement which provides:

"No teacher shall be disciplined or terminated without just cause."

and by Article XVII(C) of the Master Agreement which similarly provides:

"No employee shall be dismissed except for just cause."

Plaintiffs argue that they have been "terminated" or "dismissed" without the hearing that the just cause provisions envision. *Arnett v. Kennedy, supra,* 416 U.S. at 166, 98 S.Ct. 1633 (concurring opinion). When viewed in isolation, the quoted clauses, upon which the plaintiffs focused, facially appear to support their position. However, to accept plaintiffs' interpretation of the just cause provisions would render meaningless Article XVII(D) of the Master Agreement which provides:

"Non-tenured teachers who are not offered a renewal of contract will be provided an informal hearing before the Board of Education with a representative of his or her choice. This hearing shall be to *discuss* the reason(s) for non-renewal of contract." (Emphasis added).

Clearly, plaintiffs are non-tenured teachers who have not been offered renewal of their contracts. Therefore, the specific provisions of Article XVII(D) of the Master Agreement are directly and expressly applicable to them. The general just cause clauses of the Master Agreement are wholly inconsistent with the more particular standards of Article XVII(D). There would be no purpose for an informal discussion of the reasons for non-renewal if non-tenured teachers were entitled to a just cause hearing because a fundamental requirement of the just cause hearing is notice of the reasons for which dismissal is sought. Because "the contract is to be considered as a whole" and "if possible, all the provisions of the contract should be given effect," *J. E. Faltin Motor Transp., Inc. v. Eazor Express, Inc.,* 273 F.2d 444, 445 (C.A.3, 1959), and because "[w]here there is an inconsistency between general provisions and specific provisions [of a contract], the specific provisions ordinarily qualify the meaning of the general provisions," *Stasch v. Underwater Works, Inc.,* 52 Del. (2 Storey) 397, 158 A.2d 809, 812 (Del.Super.1960), *quoting* Restatement of Contracts, § 236(c), this Court concludes that Article XVII(D) prevails over the just cause provisions of the Master Agreement in the circumstances of this case. Thus, the Master Agreement only confers upon the non-tenured teacher a legitimate expectation of an informal discussion of the reasons for non-renewal.[23] Accordingly, plaintiffs had no property interest in employment with the Board for the 1976-77 school year.

This result is supported by the inability of plaintiffs to indicate the difference between the role they advocate for the just cause provisions and the role of the state teacher tenure law. 14 Del.C. § 1403(a).

---

**23.** Although these informal discussions were not afforded to plaintiffs as promptly as one might have expected, (Docket Item 14, p. 61), plaintiffs have not argued that the opportunity for discussion was inadequate.

Furthermore, plaintiffs, who have not addressed the significance of Article XVII(D) in their briefs, have not argued that the right to discuss informally the reasons for dismissal accorded the teachers a limited right to rebut the reasons for non-renewal.

Recognizing the importance which teachers and school boards give to receipt of tenure, it is difficult for the Court to believe that the parties to the Master Agreement would have included such a major right in such an ambiguous manner, especially where it would have been facially inconsistent with Article XVII(D). *Cf. Morris v. Board of Education of Laurel Sch. Dist. supra,* 401 F.Supp. at 205–208.[24]

Accordingly, since plaintiffs had no property interest in contract renewal, the failure of defendants to provide them with a just cause termination hearing did not deny them procedural due process.

II. *Substantive Due Process.*

 Because "the constitutional right to 'substantive' due process is no greater than the right to procedural due process," *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 4 (C.A.7, 1974) (Stevens, J.); *Weathers v. West Yuma County School Dist. R–J–1,* 530 F.2d 1335, 1340–42 (C.A.10, 1976); *Evans v. Page,* 516 F.2d 18, 21 (C.A.8, 1975); *Morris v. Board of Education of Laurel Sch. Dist., supra,* 401 F.Supp. at 213 n. 36; *Pavlov v. Martin,* 381 F.Supp. 707, 710 (D.Del.1974), *aff'd* 515 F.2d 507 (C.A.3, 1975); *cf. Mescia v. Berry,* 406 F.Supp. 1181, 1193–94 (D.S.Car.1974), *aff'd* 530 F.2d 969 (C.A.4, 1975), it follows from the Court's rejection of plaintiffs' procedural due process claim that the plaintiffs' substantive due process rights have not been violated.

Furthermore, the Court is unable to characterize the Board's decision to send non-renewal notices to ninety-six teachers as arbitrary and capricious. The defendants' explanation for their conduct does have some rational basis.[25] The anticipated decline in enrollment, the return of teachers on leave and the problems spawned by sub-

ject certification and seniority rights support the Board's decision particularly in view of the statutory and contractual requirements for giving such advance notice of non-renewal before definitive budget figures and enrollment or other statistics become available.[26]

Accordingly, summary judgment will be entered for the defendants and against the plaintiffs.

---

24. The Court need not confront the parties' concern for whether a school board can grant the equivalent of tenure to teachers who do not qualify for tenure under the statute.

25. See text accompanying notes 5–15, *supra.*

26. The decision on the merits has made it unnecessary for the Court to consider several procedural or collateral issues raised by the defendants including whether the suit is moot, whether the suit is premature, and whether the Education Association has standing to maintain this action.