Dennis MOZIER, Plaintiff,

v.

The BOARD OF EDUCATION OF the
TOWNSHIP OF CHERRY HILL,
COUNTY OF CAMDEN, Sidney Ruby,
Mimi Joy Standish, Richard M. Austin,
James G. Marino, Sylvia Mishbin, Dr.
Jonas C. Morris, Edmunds Rhoad, Ruth
Ann Willsey, and Dr. Leonard Wollack,
Individually and as Members of the
Board of Education of the Township of
Cherry Hill, and William A. Shine, Indi-
vidually and as Superintendent of
Schools of the Township of Cherry Hill,
Defendants.

Civ. A. No. 77–0705.

United States District Court,
D. New Jersey.

Aug. 19, 1977.

Goldberg, Simon and Selikoff, by Joel S. Selikoff, Clifton, N. J., for plaintiff.

Hyland, Davis & Reberkenny by William C. Davis, Cherry Hill, N. J., William D. Lavery, Jr., Haddonfield, N. J., for defendants.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

BROTMAN, District Judge.

In this civil rights suit plaintiff Dennis Mozier challenges the termination of his employment as a teacher with the Cherry Hill Board of Education. Named as defendants are the Cherry Hill Board of Education, individual members of the Board, and the Superintendent of the Cherry Hill School District.

In seeking damages, reinstatement and other relief, plaintiff urges that the termination deprived him of constitutionally protected liberty and property interests. In this respect plaintiff urges that the termination violated his rights both to procedural and substantive due process under the Fourteenth Amendment.

On June 7, 1977 a hearing was scheduled on an order to show cause why a preliminary injunction should not issue. Pursuant to Fed.R.Civ.P. 65(a)(2) that hearing was consolidated with the trial on the merits. With the consent of counsel such consolidation was limited to the question of injunctive relief; the question of damages was reserved for further proceedings.

The court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff Dennis Mozier was employed as a non-tenured teacher by the Board of Education of the Township of Cherry Hill (hereinafter "Board" or "Board of Education") under successive contracts of employment for the 1975–1976 and 1976–1977 school years (Tr. 6 morning session (hereinafter M. S.); 14 M. S.).

2. July 22, 1975 plaintiff signed a contract of employment as a teacher of science with the Board of Education for the 1975–1976 school year (D–1).

3. Plaintiff received three evaluations during the 1975–1976 school year relating to his teaching performance (P-2). All were of a positive nature.

4. On August 17, 1976 plaintiff signed a contract of employment as a teacher of science and social studies with the Board of Education for the 1976–1977 school year (P-3).

5. Plaintiff did not receive evaluations for the portion of the 1976–1977 school year he was employed by the Board of Education (Tr. 20 M. S.).

6. Plaintiff's employment contracts for the school years 1975–1976 and 1976–1977 each contained the following language:

It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party given to the other sixty (60) days notice in writing of intention to terminate the same, but that in the absence of any provision herein for a definite number of days notice the contract shall run for the full term named above (P-3, D-1).

7. Employment contract forms containing the termination clause found in plaintiff's contracts have been used in New Jersey for many years. These forms are specimen forms recommended for use by the

New Jersey Department of Education. It is standard procedure for county school superintendents to distribute these contract forms to their respective school districts. The termination clauses are essentially identical in all school districts, except that respective districts determine the number of days notice that will be given in that particular district. Contracts similar to plaintiff's are executed by each non-tenured teacher employed in the Cherry Hill school system and have been so executed for at least the past two years (Tr. 68–70 afternoon session (hereinafter A. S.)).

8. During the 1976–1977 contract year, the Board of Education entered into a collective bargaining agreement with the Cherry Hill Education Association. Article IVB of the negotiated agreement provides:

No teacher shall be disciplined, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board, or any agent or representative thereof, shall be subject to the grievance procedure and the limitations as set forth in Article III, paragraph A.

9. On November 17, 1976 plaintiff was asked to report to the office of Dr. William A. Shine, Superintendent of the Cherry Hill School District (hereinafter "Superintendent Shine"). Superintendent Shine informed plaintiff that he was suspended without pay, effective immediately, and that he should not report back to school in any teaching capacity (Tr. 17 M. S.).

10. Later that day Superintendent Shine advised plaintiff, by hand delivered letter, to meet with him at a future date

"to review . . . the matters listed which could result in the termination of [his] employment as a teacher in the School District of Cherry Hill.

1. [Plaintiff's] alleged past criminal record.

2. Recent alleged police report of criminal activities" (P-4).

The letter reiterated plaintiff's immediate suspension.

11. On December 3, 1976, the aforementioned meeting was held in Superintendent Shine's office. Present at the meeting were plaintiff; plaintiff's attorney, Joseph T. Sherman, Esq.; Superintendent Shine; an attorney representing the Board of Education; and William Laub, personnel administrator for the School District (Tr. 21 M. S.).

12. Mr. Sherman had arranged with plaintiff to appear at the December 3, 1976 meeting solely for the purpose of explaining the pending criminal charges to those at the meeting. Mr. Sherman was at that time also representing plaintiff in the criminal prosecution (Tr. 36 M. S.; 45–47 M. S.).

13. At the meeting Superintendent Shine indicated that he intended to recommend to the Board of Education that plaintiff's contract of employment be terminated. This recommendation was based upon plaintiff's prior conviction for armed robbery and the pendency of charges of illegal possession of a pistol (Tr. 23 M. S.; 64–65 A. S.).

14. Mr. Sherman explained that since the prior conviction plaintiff had undergone a complete change of lifestyle, and that it was his opinion that plaintiff would be acquitted of the pending pistol charge. This opinion was explained as based on the fact that the pistol was found in a bureau belonging to one of plaintiff's roommates and that roommate was willing to testify that the pistol belonged to him and not plaintiff (Tr. 22–23 M. S.; 37–39 M. S.; 42–43 M. S.).

15. Two sets of possible alternatives were mentioned by Superintendent Shine on December 3, 1976: those which could be initiated by the defendant Board, i. e., suspension with or without pay and termination; and those which could be initiated by plaintiff, i. e., resignation and requesting a leave of absence without pay pending disposition of the present charges. Plaintiff was informed by Superintendent Shine that it could be extremely difficult to "sell" a leave of absence to the Board (Tr. 24 M. S.; 77 A. S.). Thus, plaintiff left said meeting believing that the only viable alternative offered to him (which he could initiate) was resignation (Tr. 24–26 M. S.; 70–77 M. S.; 83–84 M. S.; 65–67 A. S.; 77 A. S.).

16. Plaintiff was advised to inform Superintendent Shine's Office within ten (10) days whether he intended to resign or pursue another course of action (Tr. 29 M. S.; 66 A. S.).

17. On December 10, 1977 plaintiff met with William Laub (in Superintendent Shine's absence) and indicated that he did not wish to submit his resignation (Tr. 28–29 M. S.). There is no evidence that plaintiff suggested another avenue to pursue.

18. On the morning of December 13, 1976 plaintiff hand delivered a letter to Superintendent Shine's secretary (P-5) asking that he be allowed to attend those meetings of the Board of Education at which the Board would consider his status as an employee thereof, and requesting that he be notified of the dates and times of those Board meetings (Tr. 31 M. S.).

19. On the evening of December 13, 1976 a meeting of the Board of Education was held. Plaintiff attended said meeting and handed to Superintendent Shine a request, similar to the one referred to in paragraph 21 (P-6). Superintendent Shine refused to accept said letter, but stated that he would accept mailed correspondence (Tr. 32 M. S.).

20. On the morning of December 14, 1976 plaintiff mailed this request (P-6) to Superintendent Shine (Tr. 32 M. S.).

21. Subsequent to the meeting between plaintiff and Mr. Laub, Superintendent Shine wrote plaintiff advising him that at the Board of Education meeting scheduled for December 20, 1976, he would recommend to the Board that plaintiff's contract be terminated effective February 19, 1977. Superintendent Shine further advised plaintiff that it would be recommended that he be paid sixty (60) days pay and be directed to not report for duty as a teaching staff member during the sixty (60) day period ending February 19, 1977 (P-8).

22. It is the position of Superintendent Shine that there "would have to be cause" for him to invoke the termination provision of a non-tenured teacher's contract (Tr. 46–47 A. S.). However, there have been no prior terminations during Superintendent Shine's term in Cherry Hill, and there was no evidence produced showing that, in practice, non-tenured teachers are terminated only where "cause" exists.

23. Superintendent Shine and the Solicitor for the Board of Education, through his assistant, informed the Board of what transpired at the December 3, 1976 meeting (Tr. 53 A. S.) and that plaintiff desired to meet with the Board (Tr. 84 A. S.). Superintendent Shine is a non-voting member of the Board of Education (Tr. 46 M. S.).

24. On December 20, 1976 plaintiff attended the meeting held by the Board of Education. The Board first met in public session during which no discussion of plaintiff's employment status took place. The Board then recessed and went across a hallway for the purpose of meeting in closed session. Plaintiff approached Superintendent Shine prior to his entry into the private session and inquired whether the Board would be discussing his employment status. If such status was to be a topic of discussion, plaintiff stated his wish to attend in order to confront any allegations made against him and to voice his position prior to any decision by the Board of Education. Plaintiff was refused admission to this closed session. Subsequently, the Board reconvened in public session at which time a resolution calling for the termination of plaintiff's employment in the district was introduced and passed (Tr. 52–54 M. S.; P-9).

25. Subsequent to the meeting on December 20, 1976, plaintiff was advised in writing of the action of the Board of Education and was instructed not to report for work during the sixty (60) day period ending on February 19, 1977 (P-9).

26. On a prior occasion, a non-tenured seventh and eighth grade teacher in the Cherry Hill School system was arrested for contributing to the delinquency of a minor. Superintendent Shine suspended the teacher, with pay, pending judicial resolution of the matter. Superintendent Shine did not recommend termination because he was persuaded by the defenses to the charge as

explained by the prosecutor. Once the grand jury returned a "no-bill" of indictment, Superintendent Shine recommended to the Board of Education that the teacher be reinstated. Subsequently, the teacher was reinstated by the Board (Tr. 51–52 A. S.; 62–63 A. S.; 80–81 A. S.).

27. In plaintiff's case Superintendent Shine made no inquiries of the prosecutor's office (Tr. 81 A. S.) and did not consider the merits of the case against plaintiff (Tr. 50 A. S.). Rather Superintendent Shine's decision to recommend termination was based solely on the fact of the prior conviction for armed robbery and the existence of pending charges for illegal possession of a pistol (Tr. 61 A. S.).

28. The grand jury has not taken any action with respect to plaintiff's pending criminal charges (Tr. 52 M. S.).

29. The varying treatment given these two teachers turned on the existence of plaintiff's prior criminal conviction. If plaintiff had no prior criminal conviction Superintendent Shine probably would have recommended to the Board of Education that plaintiff be suspended until the criminal charges were resolved (Tr. 74 A. S.).

30. Yet there is no procedure or directive of the Board of Education concerning the employment of persons who have a record of prior criminal convictions, and the Board does not question teacher candidates concerning the existence of past criminal activity (Tr. 44–46 A. S.).

31. Prior to offering plaintiff an employment contract in 1975, defendants did not ask him, in either the written application or personal interviews, whether he possessed a record of prior criminal convictions (P-1; Tr. 10 M. S.).

32. At no time after November 17, 1976 and prior to December 20, 1976 was plaintiff given an opportunity to present his case directly to the Board of Education, either to refute the allegations presented or to respond to the recommendation of the Superintendent (Tr. 58 M. S.; 53 A. S.).

33. Following his termination, plaintiff wrote the president of the Board of Educa-

tion advising him that pursuant to Article IVB of the agreement between the Cherry Hill Education Association and the Board of Education, plaintiff requested notification of the "just cause" supporting the decision of the Board to terminate plaintiff's employment contract (P-11).

34. In response plaintiff received a letter from the Solicitor for the Board of Education setting forth the reasons supporting the decision to invoke the sixty (60) day notice provision of plaintiff's contract. The reasons were plaintiff's prior conviction for armed robbery and the pendency of charges of illegal possession of a pistol (P-12).

35. On January 6, 1977 plaintiff was interviewed by Frank D. Miller, principal of the Camden County Vocational and Technical High School for a teaching position at that school (Tr. 22–24 A. S.). Miller inquired why plaintiff was currently available for employment. The following exchange took place:

"Do you want me to level with you?"
"You better level because if you don't, I'll find out why you were terminated" (Tr. 25 A. S.).

In revealing the basis for his termination plaintiff advised Miller of his past criminal record and of the pendency of charges for illegal possession of a pistol. Following the interview Miller verified this information with the Solicitor for the Camden County Vocational School, who is also the Solicitor for the Board of Education (Tr. 25–29 A. S.).

36. John J. Nathans, Director of Bryant Teachers Bureau, testified for plaintiff as an expert in educational placement (Tr. 2–3 A. S.). Mr. Nathans' expertise in this particular area is based on eight years of experience in matching teachers registered with his bureau with vacancies in the education field, and vice-versa (Tr. 2–6 A. S.). Mr. Nathans was asked to express an opinion as to the probability of a teacher's obtaining a teaching position in the public school system in New Jersey assuming that that individual, while a non-tenured teacher in a previous public school district, was termi-

nated in the middle of a contract year after having previously been suspended in that school district, and assuming further that the reasons for the termination were the existence of a prior felony conviction and pending criminal charges. Mr. Nathans replied that this individual would most assuredly have a hard time getting a job (Tr. 15–16 A. S.). This opinion was based on the fact that unless this particular teacher were willing to lie about the reasons for termination, he would have to divulge those reasons, and that because of the market conditions for teachers, any individual with even the slightest stigma would not have much chance to obtain a job (Tr. 17–18 A. S.). Mr. Nathans indicated that his opinion would be the same with regard to the prospects for employment in a case of a non-tenured teacher whose contract is simply not renewed rather than terminated (Tr. 17–18 A. S.).

## CONCLUSIONS OF LAW

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3). *See Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3rd Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

There is one basic question presented by this case: did the defendants' termination of plaintiff's employment work a deprivation of either a property or liberty interest such that neither could be accomplished without the provision of procedural due process.[1]

### I.

■ The starting point for the court's analysis of plaintiff's claim of a property interest are the Supreme Court's decisions in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Property in-

terests are not created by the Constitution but rather derive from an "independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. It is from these rules and understandings, i. e., statutory and regulatory provisions, express and implied contracts, to which the court must look to determine whether plaintiff had a legitimate claim of entitlement to continued employment. Plaintiff was a non-tenured teacher to whom the New Jersey Legislature has chosen not to extend the right of continued employment except where there is "just cause" for dismissal. N.J.S.A. § 18A:6–10. Plaintiff's one year contract provided:

> "It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party given to the other sixty (60) days notice in writing of intention to terminate the same, but that in the absence of any provision herein for a definite number of days notice the contract shall run for the full term named above."

Plaintiff urges that the contract provided for employment for one year, and therefore plaintiff had a legitimate expectancy of employment for the full contract term. Defendants urge that the above-quoted termination provision rendered the contract terminable at will.

■ The termination provision is standard contract language for non-tenured teachers. N.J.S.A. §§ 18A:27–5, 18A:27–7, 18A:27–9, Findings of Fact paragraph 7. Surprisingly, neither the parties' nor the court's research disclosed a New Jersey court decision construing this standardized contract language. However, the termination provision has been the subject of numerous decisions rendered by the New Jersey Commissioner of Education.[2] These de-

---

1. It is not disputed that defendants' actions were taken under color of state law. N.J.S.A. § 18A:11–1, § 18A:27–4.

2. The Commissioner of Education is the administrative official designated to hear and determine all controversies and disputes arising un-

cisions make clear that employment contracts containing such a termination provision may be terminated in accordance with their terms, without the need to demonstrate "good" or "just" cause. *Hochman v. Board of Education,* 1977 S.L.D. _____ (January 6, 1977); *Ramo v. Board of Education,* 1972 S.L.D. 469; *Branin v. Board of Education,* 1967 S.L.D. 9; *Amorosa v. Board of Education,* 1964 S.L.D. 126.[3] Contracts terminable at the will of the employer, subject to a 60 days notice provision create no expectancy of employment for the full contract term.[4] Employment terminable at will does not create property interests cognizable under the Due Process Clause of the Fourteenth Amendment. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

In the instant case, plaintiff was terminated pursuant to the termination clause of his contract, and was provided the requisite 60 days notice.[5] Therefore, plaintiff was provided with all that his contract of employment gave him a right to expect, i. e., 60 days notice of his discharge. Therefore, apparently no property interest was implicated in the process of his termination.

However, plaintiff relies on *Cardona v. Claflen,* Civil Action No. 75–787 (D.N.J. September 10, 1976) in which Judge Barlow determined that a non-tenured teacher had a property interest in continued employment during the full contract term. The teacher's contract in *Cardona* contained the identical termination provision as the one in the instant case. Judge Barlow determined that the contract is "susceptible of an interpretation" that it is terminable at will; yet the defendants conceded that the contract could not be terminated without providing a hearing. Apparently on the strength of that concession a property interest was found. The *Cardona* opinion does not explain the basis for the existence of a property interest or review the decisions of the Commissioner of Education which have construed the contracts of employment. Therefore, the court does not deem it persuasive authority for the proposition that contracts containing such 60 day termination provisions create property interests in continued employment.

Plaintiff also relies on the New Jersey Supreme Court decision in *Donaldson v. Board of Education,* 65 N.J. 236, 320 A.2d 857 (1974) where the court held that non-tenured teachers were entitled to a statement of the reasons for their non-renewal, and strongly suggested that such reasons be communicated by the respective boards of education at an informal hearing. However, the court specifically disavowed any reliance on due process principles. The court reaffirmed the broad discretion that boards of education have in deciding whether to continue to employ non-tenured teachers, and in no fashion deviated from the long line of precedents which has held that non-tenured teachers have no legitimate claim of entitlement to continued employment. Therefore, although *Donaldson* did extend to teachers the right to know why they were not renewed, it did not burden

---

der the school laws. N.J.S.A. § 18A:6–9. His decisions may be appealed to the State Board of Education, N.J.S.A. § 18A:6–27, and thereafter to the Appellate Division of Superior Court. N.J.Rule of Court 2:2–3(a). The opinions of the Commissioner and the State Board are distributed to interested persons and are eventually bound in volumes of School Law Decisions (S.L.D.).

**3.** These cases distinguish a termination pursuant to a notice provision from a summary dismissal without the notice required by the contract. Dismissal without the requisite notice provided in the contract cannot be accomplished in the absence of "good" or "just"

cause. *E. g., Branin v. Board of Education,* 1967 S.L.D. 9.

**4.** Here the language of the contract indicates that in the absence of a definite notice provision (for example 30, 60 or 90 days) the contract shall run for the full school year. Accordingly, the presence of a 60 day notice provision in plaintiff's contract vitiates any expectancy of year long employment.

**5.** Plaintiff was not allowed to teach during the period between the date of notice, December 21, 1976 and the date of termination, February 19, 1977. Whether a terminated teacher may continue to perform his duties is at the option of the school board. N.J.S.A. § 18A:27–9.

the decision of the boards of education whether to renew non-tenured teachers.[6] Therefore, *Donaldson* extends an expectation of certain procedures, but does not impart any substantive restriction on the decision itself. Thus, it adds nothing to plaintiff's expectation of continued employment. *See Bishop v. Wood, supra.*

While the Board of Education had discretion to terminate plaintiff, such discretion was not unlimited. Pursuant to § 18A:6–9 a teacher has the right to appeal termination and non-renewal decisions on the grounds that the decision is arbitrary and capricious or for proscribed reasons. *Donaldson v. Board of Education, supra,* 65 N.J. at 246–48, 320 A.2d at 862–63; *see North Bergen Federation of Teachers v. Board of Education,* 1975 S.L.D. _____ (February 26, 1975). However, such review merely insures that impermissible reasons are not utilized in termination decisions. It in no way limits the multitude of acceptable termination rationales which fall well short of the "just cause" standard. That schools do not make employment decisions without reasons is to be expected. However, a nonarbitrary decision-making process does not create an expectancy of continued employment. *See Morris v. Board of Education,* 401 F.Supp. 188, 209 (D.Del.1975).[7] There is a vast difference between proscribing impermissible termination rationales or establishing a sample of permissible rationales, and establishing the "exclusive conditions under which an employee could be dismissed." Note, *Statutory Entitlement and the Concept of Property,* 86 Yale L.J. 695, 697–98 (1977).

As the *Donaldson* court realized, the availability of administrative and judicial review to weed out unlawful, or arbitrary and capricious termination decisions does not create a de facto tenure system and, therefore, does not give rise to an expectancy of continued employment. *Donaldson, supra,* 65 N.J. at 240–48, 320 A.2d at 859–63. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, n. 2, 51 L.Ed.2d 92 (1977) (per curiam) (*semble*).

Lastly, plaintiff relies on Article IVB of the collective bargaining agreement between the Board of Education and the Cherry Hill Education Association, the Cherry Hill teachers' exclusive bargaining representative.[8]

Article IVB provides:

No teacher shall be disciplined, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board, or any agent or representative thereof, shall be subject to the grievance procedure and the limitations as set forth in Article III, paragraph A.

Plaintiff urges that the individual contract and Article IVB of the collective bargaining agreement be read *in pari materia,* i. e., that they be construed together. The construction suggested is that a non-tenured teacher may be terminated on 60 days notice if just cause exists. Such a construction renders superfluous that portion of the individual contract which provides that in the absence of a definite notice provision the contract is deemed to run for the full school year. Furthermore, plaintiff's proposed construction is not the only possible

---

6. Plaintiff has not asked this court to determine whether he was entitled, as a matter of state law, to an informal hearing before the Board of Education at which time the reasons for his termination could be explained. The disposition of this case in no way touches upon that issue.

7. In that case employment decisions, involving non-tenured teachers, were premised on nonarbitrary reasons and did not create an expectancy of continued employment. However, there was no indication that the employment decisions were subject to judicial review. The existence of state judicial review would not

appear determinative. *But see, Codd v. Velger,* 429 U.S. 624, 639–640, 97 S.Ct. 882, 890, 51 L.Ed.2d 92 (1977) (Stevens, J., dissenting).

8. Pursuant to N.J.S.A. § 34:13A–1 *et seq.* such collective bargaining agreements are permissible. The "terms and conditions of employment" are proper subjects of arbitration. N.J.S.A. § 34:13A–5.3. The precise scope of that statutory prescription is subject to continued judicial interpretation. *E. g., Dunellen Board of Education v. Dunellen Educational Association,* 64 N.J. 17, 311 A.2d 737 (1973).

reading of the two documents. They could be construed to provide that during the period of employment, as set forth in the individual contract, no teacher shall be disciplined, etc., without just cause.[9]

■ The court agrees with Judge Stapleton's observation that ambiguous collective bargaining provisions should hesitatingly be construed to find that a board of education intended to delegate to an arbitration panel its discretion in making termination decisions concerning non-tenured employees. *Morris v. Board of Education,* 401 F.Supp. at 205–06. In the instant case the section of the collective bargaining agreement invoked by plaintiff does not mention termination or dismissal, nor does it indicate any difference in the treatment of tenured and non-tenured teachers. Article IVB's general language must be construed in light of the legislative scheme, longstanding administrative decisions[10] and the standardized individual contracts. In this regard the court believes that it requires a substantially clearer statement of intent to find that a board of education has extended to teachers terminable upon 60 days notice the right to expect continued employment in the absence of just cause for termination. *See New Castle—Gunning Bedford Educational Association v. Board of Education,* 421 F.Supp. 960 (D.Del.1976). Therefore, the court does not construe Article IVB of the collective bargaining agreement to govern the termination of a non-tenured teacher pursuant to a 60 day notice provision. Accordingly, Article IVB does not extend an expectancy of continued employment.[11]

■ For all the reasons expressed the court determines that plaintiff had no legitimate expectancy of continued employment and, therefore, his termination implicated no property interest cognizable under the Due Process Clause of the Fourteenth Amendment.

## II.

Plaintiff contends that the termination of his employment worked a deprivation of liberty interests cognizable under the Due Process Clause. In a January 10, 1977 letter from the Board of Education's Solicitor, it was explained that plaintiff's termination was premised on his prior conviction for armed robbery and the pendency of criminal charges of illegal possession of a pistol (P-12). It is asserted that plaintiff was entitled to a hearing because the reasons disclosed by the Board of Education damaged his reputation and effectively foreclosed future employment opportunities. *Board of Regents v. Roth, supra.*[12]

9. Under such an interpretation, absent termination of the contract by providing 60 days notice, a non-tenured teacher could not be dismissed without "just cause." That would be consistent with the Commissioner of Education's interpretation of the rights flowing from the individual contracts. *See* n. 3 *supra.*

10. The decisions of the Commissioner of Education give meaning to the standardized individual contract language and establish the general understanding existing between non-tenured teachers and their employers. Plaintiff has not revealed any experiences under collective bargaining agreements indicating how such agreements have altered the basic understanding that non-tenured teachers may be terminated without just cause pursuant to the notice provision in their contracts. The court has been made aware of no instance in which a non-tenured teacher's termination was the subject of a grievance procedure under any collective bargaining agreement in the state.

11. Not raised or decided is the applicability of Article III D of the collective bargaining agreement:

"The following matters shall not be arbitrable:

4. In matters where the discretion of the Board may not be unlimited but where, after the exercise of such discretion, a further review of the Board's action is available to teachers under provisions of State Law." As was noted earlier, the Board's discretion in termination decisions is not wholly unfettered; and review is available under N.J.S.A. § 18A:6–9.

12. Plaintiff does not seek a delayed hearing to vindicate the liberty interest asserted. Rather he seeks reinstatement and damages for the defendants' failure to provide such a hearing. *Compare Codd v. Velger,* 97 S.Ct. at n. 1 *with Codd v. Velger,* 97 S.Ct. 886 n. 1 (Stevens, J., dissenting).

First, defendants urge that no liberty interest is implicated because the reasons for the discharge have not been made public. *Bishop v. Wood, supra* 96 S.Ct. at 2079; *Cardona v. Claflen, supra* at n. 2. Although the Board of Education did not publicly announce the reasons for its termination of plaintiff, it would seem clear that the reasons will be disclosed to potential employers who inquire. Disclosure has already been made by the plaintiff in response to a potential employer's inquiries. Similarly, the evidence would indicate no basis to believe that the Board Education or its agents would not disclose the reasons for plaintiff's termination. The court assumes the existence of sufficient disclosure and potential for disclosure not to preclude further examination of plaintiff's liberty interest. *See Velger v. Cawley,* 525 F.2d 334 (2nd Cir. 1975), *rev'd on other grounds sub nom. Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam).

However, for two separate but related reasons the court concludes that plaintiff was not entitled to a hearing. First, in contrast to the cases cited by the parties, the terminating employer is not the original source of the stigma. Here the Board of Education did not label plaintiff but acted upon labels previously determined by other authorities. The Board terminated plaintiff after learning from local police authorities and the State of Kansas that plaintiff had been arrested, and had been convicted of a felony eight years previously. The stigma flowing from the prior conviction and present pending charges is not imposed by the Board of Education but rather flows from events over which the Board had no control. While it is true that potential employers may learn of these stigmatizing facts from the Board of Education, that does not mean the Board caused the stigma to exist.[13] The utilization of that stigmatizing information in the decision to terminate plaintiff's employment does not implicate liberty interests. *See Gueory v. Hampton,* 167 U.S.App.D.C. 1, 510 F.2d 1222 (1974). Future employers remain free to evaluate plaintiff's criminal conviction and arrest record as they wish.

In a related vein, plaintiff does not dispute the truth of the facts asserted by the Board of Education. There is no question that plaintiff had been convicted of armed robbery and arrested for illegal possession of a pistol. Where there is a stigmatizing reason accompanying a termination "the remedy mandated by the Due Process Clause is an opportunity to refute the charge." *Codd v. Velger, supra* 97 S.Ct. at 883–84 *quoting Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. 2701. If there is no dispute that plaintiff was convicted of armed robbery and faces pending charges of illegal possession of a pistol, as set forth in the Board's Solicitor's letter of January 10, 1977, there is no point to a hearing designed "to provide the person an opportunity to clear his name." *Codd v. Velger, supra* 97 S.Ct. at 884.

 For all the foregoing reasons plaintiff was not entitled to a hearing to protect a liberty interest cognizable under the Due Process Clause.

### III.

Inasmuch as the court finds that plaintiff's termination implicated no protected property or liberty interest, there is no occasion to pass upon the adequacy of the procedures made available.

 Similarly, the court has no occasion to pass upon plaintiff's substantive due process claim. Plaintiff's claim to substantive due process can rise no higher than his right to procedural due process. *New Castle—Gunning Bedford Educational Association v. Board of Education,* 421 F.Supp. at 965; *Pavlov v. Martin,* 381 F.Supp. 707, 710 (D.Del.1974), *aff'd mem.,* 515 F.2d 507 (3rd Cir. 1975).

---

**13.** Plaintiff has not suggested that state law prevents the dissemination of information concerning criminal convictions and arrest records. Furthermore, the Supreme Court has preempted any argument that, as a matter of Constitutional law, such information may not be publicized. *Paul v. Davis,* 424 U.S. 693, 712–713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

**752**

Accordingly, a judgment order of no cause for action will be entered this day.